UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TYLER YARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-CV-79-DCP |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Tyler Yarber ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner of Social Security ("Commissioner"), denying Disability Insurance Benefits ("DIB") [Doc. 1]. For the reasons set forth below, the Court will **AFFIRM** the final decision of the Commissioner.

I.     **PROCEDURAL HISTORY**

On January 4, 2021, Plaintiff filed for DIB and supplemental security income benefits pursuant to Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging that he has been disabled since June 27, 2020 [Tr. 15, 262–79]. After his claims were denied initially [*id.* at 99, 111] and upon reconsideration [*id.* at 111, 112], Plaintiff requested a hearing [*id.* at 178–79]. On September 12, 2023, Plaintiff, represented by counsel, appeared before Administrative Law Judge Suhirjahaan Morehead ("ALJ") by telephone for a hearing [*Id.* at 39–59]. On November 1, 2023, the ALJ found Plaintiff not disabled [*Id.* at 15-32]. The Appeals Council denied Plaintiff's request for review [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on March 10, 2025, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is ripe for adjudication [Docs. 13, 17, 20]. Fed. R. Civ. P. Supp. SS. 8.

## II.     DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

2

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)). Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since August 1, 2020, the amended alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hypertensive heart disease, morbid obesity, hypertension, degenerative disc disease of the lumbar and thoracic spine, bilateral carpal tunnel syndrome, major depressive disorder, anxiety, post-traumatic stress disorder (PTSD), and agoraphobia with panic attacks (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

3

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except he can perform all postural activities occasionally except that he can never climb ladders, ropes or scaffolds; can have no exposure to hazards such as unprotected heights or moving machinery; can reach overhead with the bilateral upper extremities on an occasional basis; can understand, and remember, and carry out simple and detailed but not complex instructions; can have occasional interactions with supervisors, coworkers, and the public; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; and can deal with occasional changes in a routine work setting.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on August 4, 1989, and was 30 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Pt. 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2020, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

[Tr. 15–32 (citations cleaned up)].

4

### III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

### IV.    ANALYSIS

Plaintiff raises one issue on appeal: that "[t]he Agency failed to apply the correct law to the facts in [Plaintiff's] claim" [Doc. 13 p. 2]. Specifically, Plaintiff argues that "[w]hen . . . the

Social Security Administration states it is applying *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and *Dennard v. Sec'y of Health & Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990) and never mentions *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), it means that the Agency did not correctly apply the law" [*Id.* (citations cleaned up)].[1]

Plaintiff states that this is his second time applying for disability and that "[t]he prior ALJ decision found him highly limited but not disabled" [*Id.* at 1 (citing Tr. 60)]. Plaintiff "contends he got worse over time and that this claim should have produced a reduced functional capacity assessment" [*Id.* (citing Tr. 423–24)]. Plaintiff asserts that "[had] the ALJ applied *Earley* she probably would have followed the factors in *Early* [sic] to auger in favor of a more restrictive residual functional capacity and in so doing [Plaintiff] would have been found disabled" [*Id.* at 2 (citation omitted)]. He maintains that "[h]e was already essentially disabled under the prior ALJ findings in any event" [*Id.* at 2–3 (citing Tr. 303)].

Plaintiff argues that "[t]he Agency itself acquiesced that the correct law to apply was *Earley*" in its Acquiescence Ruling ("AR") 24-1(6), effective December 2, 2024, and notes that his Appeals Council denial was issued January 2, 2025 [*Id.* at 3]. Plaintiff highlights that the ALJ applied prior law by citing to *Drummond* and *Dennard* and argues that *Earley* "greatly modified how to consider a 'follow on' or later subsequent SSDI claim" [*Id.* at 4].

The Commissioner responds and submits that "[c]ontrary to Plaintiff's argument, the ALJ complied with *Earley* when she gave a 'fresh' look to the new evidence while being 'mindful' of a prior ALJ decision from 2020, and she based the RFC on the record as a whole" [Doc. 17 p. 4]. Citing to *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662, at *4 (6th Cir. Mar.

---

[1]     The Court notes that Plaintiff's Brief cites to *Early v. Commissioner of Social Security*, 893 F.3d 837 (6th Cir. 2018), but that the correct cite is *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018).

20, 2024) and *Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817, at *4–5 (6th Cir. June 24, 2024), the Commissioner states that "the Sixth Circuit has recognized that an ALJ's citation to *Drummond*, rather than the standard more recently described in *Earley*, does not warrant remand as long as the substance of the ALJ's decision shows that the ALJ gave the new claim a fresh look consistent with *Earley*" [*Id.* at 4].

Finally, the Commissioner highlights that in conjunction with the AR 24-1(6) ruling, "the Agency also published Hearings, Appeals, and Litigation Law Manual (HALLEX) § 01540.075 on December 2, 2024, which 'provides guidance for implementing [AR] 24-1(6)'" [*Id.* at 6]. HALLEX § 01540.075 states that the Appeals Council "will not grant review of a properly issued hearing decision dated prior to December 2, 2024 solely to apply the Earley AR." HALLEX § 01540.075.

Plaintiff replies that "[t]he arguments of the Agency in their brief do not delve into the requirements that they must shoulder in making a later disability adjudication following an earlier adjudication" [Doc. 20 p. 1]. Plaintiff maintains that "the Appeals Council nor the ALJ explained in any detail to allow understanding how the prior ALJ decision was weighed and what justified a more capable capacity now as opposed to previously assessed capacity" [*Id.* at 4 (emphasis omitted)].

### A.      Caselaw on Subsequent Disability Applications

In *Drummond*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlements to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842. The claimant in that case was initially assessed for an RFC for sedentary work, but when she refiled her disability claim, a second ALJ found the claimant retained an RFC suitable for medium-level work and again denied her claim.

*Id.* at 839. After explaining that "[r]es judicata applies in an administrative law context following a trial type hearing," the Sixth Circuit found that, absent evidence of "changed circumstances" related to an applicant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. In response to *Drummond*, the Social Security Administration issued AR 98-4(6), which provides:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim ... unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

Later, in 2018, the Sixth Circuit clarified the scope of *Drummond* in *Earley* and held that res judicata only applies to subsequent applications for "the same period of time . . . rejected by the first application." *Earley*, 893 F.3d at 933. The Sixth Circuit explained that *Drummond* was not intended to extend *res judicata* to foreclose review of a new application for a new period of time, reasoning that "[a]ny earlier proceeding that found or rejected the onset of disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id.* Where disability is alleged for a different distinct period of time, the application is entitled to a "fresh look." *Id.* In the absence of new and additional evidence, the Sixth Circuit held that the subsequent ALJ may treat the prior ALJ's findings as "legitimate, albeit not binding, consideration in reviewing a second application." *Id.* As the Sixth Circuit succinctly stated, "[f]resh review is not blind review." *Id.* at 934.

Since then, the Sixth Circuit has issued two unpublished opinions relevant to this matter. First, in *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662 (6th Cir. Mar. 20,

2024), the Sixth Circuit examined the issue of whether the ALJ treated his review of the new disability application as if he were bound by the previous prior disability application, "thereby depriving [Plaintiff] of a 'fresh look' under *Earley. Id.* at *4. It decided that this error did not warrant remand where the record was "replete with evidence" that the ALJ had "reached an independent conclusion while recognizing that he was not bound by the prior decision—as required under Earley." *Id.* at *4–5.

The *Dennis D.* Court also found that it was proper for the subsequent ALJ "to measure the new medical evidence 'against the backdrop' of the prior RFC finding instead of assessing the new evidence on its own merits." *Id.* at *6 (citing *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio Mar. 8, 2023)). The Court of Appeals found "it is perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding," for this promotes "finality, efficiency, and consistent treatment of like cases." *Id.* The Court explained,

> [T]he suggestion that an ALJ considering a subsequent application should not evaluate a claimant's new records for evidence of a significant change in relation to a prior valid finding strikes us as an overly broad reading of *Earley*. Presuming accuracy is not the same as treating prior findings as binding.

*Id.*

Second, and perhaps most germane to this case is the Sixth Circuit's decision in *Gooden v. Comm'r of Soc. Sec.*, No. 23-3927, 2024 WL 2830817 (6th Cir. June 4, 2024). There, the Sixth Circuit again considered whether the ALJ failed to give the claimant's second application an independent "fresh look" when the ALJ stated she "must adopt" the first ALJ's RFC unless "there is new and material evidence or changed circumstances" or "there has been a change in the relevant law." *Id.* at *3. Citing *Dennis D.*, the Court "again rejected the notion that it was error for the [second] ALJ to use the first ALJ's determinations as a starting point." *Id.* The Court explained,

9

however, that in determining whether the second ALJ's reference to the "bound by the prior decision" language constitutes harmless error or supports remand, a reviewing court should look beyond "rote language" to examine the ALJ's actual analysis:

> [O]n appeal, we need determine only whether the second ALJ *actually* afforded the new application a "fresh look" under *Earley*, notwithstanding rote recitation of a legal standard suggesting otherwise. Despite Gooden's assertion that we "must reverse" if the ALJ applied an incorrect legal standard, *Earley* requires remand only when the judge *actually applied* incorrect res judicata principles. So under our precedent, the key question is whether the second ALJ treated review of the new application "as if" they were "bound by the prior decision." If not, then she did not reversibly err.

*Id.* (internal citations omitted).

In short, the Sixth Circuit confirmed that a close examination of the record is required. *Carla K. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 3593353, at *5 (6th Cir. Mar. 20, 2024) (citing *Gooden*, 2024 WL 2830817, at *4). Because the ALJ had fully considered the new evidence and medical records from the period following the original denial, the Court found that reversal was not warranted. *See Gooden*, 2024 WL 2830817, at *4. Therefore, the "'real finding' . . . was a fresh one, regardless of the standard the ALJ recited at the beginning of her opinion." *Id.*

In determining whether the ALJ had conducted a fresh look, the *Gooden* Court emphasized "[t]he depth of the judge's reasoning" including that: (1) the second ALJ "stated anew" the five sequential steps required to determine disability; (2) the second ALJ found slightly different impairments at Step Two; (3) the second ALJ "balanced new testimonial evidence that [Plaintiff] provided ... against other medical evidence"; (4) the second ALJ "focused on medical evidence from the period after the first decision" and "factored in scores of new datapoints," which resulted in new RFC limitations. *Id.*

### B.      ALJ's Decision

In this case, the ALJ cites to *Drummond* for the proposition that "a subsequent administrative law judge is bound by the residual functional capacity determined in a prior administrative law judge's decision unless improvement or deterioration in the severity and functional impact of an individual's impairments can be established" [Tr. 21].[2] The ALJ states that "[w]hile I have used the prior residual functional capacity as a starting point, I find the record supports some changes and clarification of wording to the residual functional capacity. I also note that the musculoskeletal listings have changed since the issuance of the prior decision" [*Id.*].

Because the ALJ gives "an inaccurate recitation of the legal effect of the prior determination, the question for our consideration is whether, despite this misstatement of the legal standard, [the ALJ] treated [her] review of the new application as if [she] were bound by the prior decision, thereby depriving [Plaintiff] of a 'fresh look.'" *Dennis D.*, 2024 WL 1193662, at *4. And here, the ALJ's analysis confirms that she took a "fresh look" at all relevant evidence when determining Plaintiff's RFC and that she supported the RFC with substantial evidence. First, like in *Gooden*, the ALJ began her decision by stating anew the five sequential steps she was required to determine [Tr. 15–17]. Notably, at step two, while finding the same severe impairments, the ALJ found several different nonsevere impairments, including obstructive sleep apnea, GERD, and diabetes mellitus [*Id.* at 18]. At step three of her analysis, the ALJ examined anew whether Plaintiff's mental impairments met or medically equaled the requirements of a listing. As part of the analysis, the ALJ considered the four broad areas of mental functioning known as the

---

[2]      As noted by Plaintiff, the ALJ also cites to *Dennard* but this is when she adopts the "finding of the demands of [Plaintiff's] past relevant work and other aspects of the claimant's vocational background" of the vocational expert who testified at the June 10, 2020 hearing. Plaintiff fails to explain why this is reversible error. *See McPhearson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Thus, that argument is waived.

"paragraph B" criteria, and in assessing the severity of Plaintiff's limitations, she provided multiple citations to record evidence, including a Function Report dated July 20, 2022, a psychological consultative evaluation by Justin Wright, Psy.D. ("Dr. Wright"), dated February 16, 2022, records of other mental health providers, and Plaintiff's hearing testimony, for the conclusions that Plaintiff had only a mild limitation in understanding, remembering or applying information and moderate limitations in the remaining three functional areas [*Id.* at 18–20]. This assessment, which includes review of new evidence that did not exist in the record at the time of the prior decision, supports a finding the ALJ reviewed the evidence with fresh eyes.

At step four, in addressing Plaintiff's mental impairments, the AJL balanced Plaintiff's testimony at the hearing against other medical evidence. For example, the ALJ considered Plaintiff's testimony that his mental health was "very bad" and that he "constantly" had thoughts of suicide [*id.* at 29]; that he wants to have bariatric surgery but could not be cleared due to his mental health [*id.*]; and that his medications would help for a couple of weeks, but that he reverts to more severe symptoms and that he is trying to find another mental health provider [*Id.*]. The ALJ, however, found Plaintiff's subjective complaints unpersuasive, as his mental health treatment records from February 2023 noted some improvement as well as consistent intact memory and good concentration, and indicated that he was learning coping skills and discussing triggers relating to his anxiety and depression [*Id.* at 28 (citing Exh. B25)]. In his psychological consultative exam in 2022, Plaintiff was oriented and able to provide appropriate responses and was noted as only having mild to moderate mental limitations [*Id.* (citing Exh. B21F). While Plaintiff reported constant suicidal ideation, the ALJ noted that the record contains no indication of referral to inpatient treatment or intensive outpatient treatment, other than one hospital admission for two days in 2021 for suicidal ideation, after which Plaintiff reported improved mood

12

[*Id.* (citing Exh. B28F)]. Further, Plaintiff reported not being able to follow up with his mental health providers for reasons not specified in the record [*Id.*].

The ALJ also addressed Plaintiff's subjective complaints about his physical pain, noting that Plaintiff had some relief with conservative treatment measures, but that the treatment was discontinued after 2022, and that Plaintiff missed almost as many therapy sessions as he attended in 2021 through 2022, despite having responded well to therapy and reporting decreased pain when he attended [*Id.* (citing Exhs. B10F; B29F)]. While Plaintiff was evaluated at a pain management practice in June 2022, he was only treated for about six months [*Id.*]. Plaintiff reported good reduction in pain when he used the medication but asked to see a different provider after not being pleased with the office [*Id.* (citing Exh. B21F)]. Finally, the ALJ considered that Plaintiff began interventional pain therapy and that he indicated 90 percent relief for two to three weeks after a facet rhizotomy and a current pain level of 3 out of 10 [*Id.* (citing B24F)]. Because the ALJ cited to new medical records when considering Plaintiff's new testimony, it is clear that the ALJ indeed reviewed the second application.

Further support of the ALJ's "fresh look" is demonstrated by her thorough review of the new medical records and opinions in the record that did not exist at the time of the previous ALJ's decision. Starting with Plaintiff's mental health treatment, the ALJ provided an in-depth analysis of his medical records. For example, the ALJ noted treatment records through Cherokee Health Systems through October 29, 2020 [*Id.* at 23 (citing Exh. B2F)]. On October 29, 2020, Plaintiff reported ongoing anxiety and mood symptoms, with intermittent suicidal ideation and panic attacks [*Id.*]. On December 9, 2020, Plaintiff reported a history of daily suicidal ideation, but stated that it was less now, and that Buspar and Trazodone were helpful and on February 3, 2021, Plaintiff reported that his mental state was "feeling better," that his mood was stable and denied suicidal

13

ideation [*Id.*]. The ALJ also noted records from Hiwassee Mental Health Center and Health Connect America, beginning with January 26, 2022 continuing through February 3, 2023 [*Id.* (citing Exhs. B13F; B25F)].

Further, the ALJ addressed the new medical opinions of the record. She first considered a new psychological examination, which was performed by Dr. Wright on February 16, 2022 [Tr. 22 (citing Exh. B12F)]. Dr. Wright opined that Plaintiff had major depressive disorder, recurrent episodes, severe, with psychotic features, that he fell into the average range of intellectual functioning, with mild to moderate impairment in short-term memory and no impairment in long-term and remote memory function, mild to moderate impairment in ability to sustain concentration, mild impairment in social relating, that he was mildly impaired in his ability to adapt and change, and appeared able to follow spoken but not written instructions [*Id.*]. She also considered the opinions of two DDS psychological consultants. The ALJ found the March 3, 2022 opinion of Robert de la Torre, Psy.D. and the January 9, 2023 opinion of Rebecca Hansmann, Psy.D. to be generally persuasive, as both were generally consistent with the findings of Dr. Wright, who found the claimant had mild to moderate mental limitations [*Id.* (citing Exhs. B3A; B5A; B8A; B9A)].

Next, looking at the physical evidence of record, the ALJ noted exams from Prayash Patel, M.D. ("Dr. Patel"), for evaluation of back, neck, right lower extremity pain and paresthesia, upper extremity paresthesia, and hand difficulty [*Id.* (citing Exh. B1F)]. Dr. Patel noted that Plaintiff's lumbar MRI showed multilevel spondylosis, a congenital narrow canal with a disc protrusion, and smaller disc protrusions with milder stenosis, and recommended epidural steroid injections and significant weight loss [*Id.* at 25–26]. On April 17, Plaintiff reported improved radicular back pain, but continued moderate to severe low back pain, midthoracic backpain, and spasms; he was advised to wear his wrist braces and counseled on weight loss [*Id.*]. On August 19, Plaintiff

14

reported mostly musculoskeletal axial neck, thoracic, and neck pain, and was consulted on conservative treatment and was encouraged again to lose weight [*Id.*]. The ALJ noted that Plaintiff saw a neurologist, Joshua Alpers, M.D., on April 24, 2020, for bilateral hand weakness, and was prescribed bilateral wrist braces [*Id.*].

The ALJ also highlighted Plaintiff's physical therapy treatment, which he began in March 2021, and initially showed improvement and demonstrated increased range of motion and strength with reports of decreased pain and increased function [*Id.* (citing B29F)]. Plaintiff attended thirty-four sessions, but missed thirty-three, and was discharged on September 21 due to the aquatic therapy pool being broken [*Id.* (citing Exh. B29F)]. Plaintiff was re-evaluated in December 2021 and reinitiated therapy in 2022, and on April 27, 2022, he was noted to respond well to therapy and reported decreased pain when he attended [*Id.*]. However, the ALJ noted that his attendance was limited to transportation and psychological issues [*Id.*].

The ALJ then detailed Plaintiff's pain treatment, beginning with an exam with Plaintiff's primary care provider, Kevin Gooch, M.D., on September 17, 2021 [*Id.* (citing Exh. B9F)]. Plaintiff was then evaluated at Consultants in Pain Management on June 7, 2022, where he was prescribed Tramadol [*Id.* (citing Exh. 21F)]. On December 28, Plaintiff reported that pain medication was helpful, that he used it very sparingly, and that he was not pleased with the office and requested to see a different provider [*Id.*]. The ALJ further discussed Plaintiff's treatment at Neurosurgical Associates and highlighted that after treatment, Plaintiff reported 90 percent reduction in pain for two to three weeks, a current pain score of 3 out of 10 [*Id.* at 29 (citing Exh. B24F)].

The ALJ also considered Daniel Cronk's, M.D. ("Dr. Cronk") evaluation of Plaintiff for bariatric surgery on January 26, 2022, in which he opined that with additional work on his mental

health over the next nine to twelve months that Plaintiff would be cleared for surgery [*Id.* at 27 (citing Exhs. B11F; B18F; B19F; B20F)]. In a letter dated January 4, 2023, Dr. Cronk indicated that Plaintiff was not able to currently work due to his back symptoms, but that there was a reasonable chance he would have bariatric surgery within the next six months [*Id.*]. The ALJ commented on Dr. Cronk's opinion of Plaintiff's inability to work and found it was unpersuasive, as he did not provide a function-by-function analysis of Plaintiff's limitations [*Id.* at 29]. Additionally, the ALJ considered the evaluation of Plaintiff for bariactric surgery by psychologist Donald Brookshire, Psy.D., noting lack of improvement from current medications, recommending further mental health treatment, and concluding he was not an appropriate surgical candidate [*id.* at 27–29 (citing Exh. B18F)] as well as his reevaluation of Plaintiff for bariatric surgery on March 30, 2023, where he found that Plaintiff needed further stabilization before having surgery [*id.* (citing Exh. B22F)].

Finally, the ALJ considered the opinion of DDS consultant, Frank Pennington, M.D. ("Dr. Pennington") and Ok Yung Chung, M.D. ("Dr. Chung"). She found Dr. Pennginton's February 7, 2022 opinion unpersuasive, explaining that his opinion on standing and walking was nonspecific, contradicted itself, and that there was no medical evidence that Plaintiff would be so limited [*Id.* at 25 (citing Exhs. B3A, B5A)]. The ALJ found Dr. Chung's December 29, 2022 opinion to be generally persuasive, but decided to further limit Plaintiff in overhead reach based on Plaintiff's subjective complaints [*Id.* (citing Exhs. B8A, B9A)]. The ALJ highlighted records that she said showed progress with conservative treatment, such as physical therapy and medications, and noted Plaintiff's reports that he can interact with his children, play card games with his friends, and had increased lifting and carrying when his baby was born as support for sedentary limitations [*Id.* (citing Exhs. B10F, B21F, B13F, B25F)].

Accordingly, the Court finds that the ALJ's analysis shows that she relied upon evidence in the current record to reach her RFC finding, demonstrating that she gave the evidence the "fresh review" required by *Earley*, despite citation to the incorrect legal standard. *See Dennis D.*, 2024 WL 1193662, at *4 (finding that an ALJ's approach that engaged in an in-depth review and analysis of the new evidence related to the current claim period, as well as the evidence and findings from the prior decision, satisfies *Earley's* requirements); *see also Carla K.*, 2024 WL 3593353, at *6 (ALJ's "thorough review of the new evidence contained in the record" that did not exist at the time of the prior ALJ's decision is evidence he provided the "independent 'fresh look'" required by *Earley*); *Linda A. v. Comm'r of Soc. Sec.*, No. 3:23-cv-208, 2024 WL 242504, at *7 (S.D. Ohio Jan. 23, 2024) (finding remand unwarranted despite the ALJ's citation to *Drummond* and *Dennard* because it was clear the ALJ "reviewed the new evidence to give Plaintiff's application the required 'fresh review'" (quoting *Earley*, 893 F.3d at 933)).

While Plaintiff argues that had the ALJ applied, *Earley*, "she probably would have . . . [found] a more restrictive [RFC] and in doing so [he] would have been found disabled," like the claimant in *Dennis D.*, Plaintiff does not point to any evidence that would support greater limitations than those found by ALJ Morehead. *Dennis D.*, 2024 WL 1193662, at *7; *see also Krista L. v. Comm'r of Soc. Sec.*, No. 3:23-CV-144, 2024 WL 1596323, at *6 (S.D. Ohio Apr. 12, 2024) (noting that aside from citation to the pre-*Earley*, the plaintiff had not pointed to any evidence of the record that the ALJ failed to consider). Plaintiff does highlight that Dr. Cronk "commented that he didn't think he could be gainfully employed"; the Court notes, however, that the ALJ explicitly considered Dr. Cronk's comment and found it was unpersuasive, as he did not provide a function-by-function analysis of Plaintiff's limitations [Tr. 29]. The ALJ further noted

17

that "[q]uestions of employability are best left to a vocational expert and the ultimate question of disability is left to the Commissioner" [*Id.*].

Finally, Plaintiff submits that the ALJ was required "to weigh and explain the reasons the prior ALJ decision was honored and departed from" and argues that "did not happen in this case" [Doc. 20 p. 2 n.1]. The Court finds, however, that the ALJ did explain why the prior ALJ decision was departed from, as she stated "the record supports some changes and clarification of the wording to the residual functional capacity" and noted "that the musculoskeletal listings have changed since the issuance of the prior decision" [Tr. 21]. This, combined with her extensive consideration of the new medical evidence in the record in her seventeen-page decision, demonstrates the ALJ's explanation as to why she granted a less restrictive functional capacity.

## V.    CONCLUSION

For the reasons explained, the Court hereby **AFFIRMS** the decision of the Commissioner. The Court will **DIRECT** the Clerk of the Court to close this case.

**ORDER ACCORDINGLY.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

18